## No. 24-20144

# In the United States Court of Appeals
# For the Fifth Circuit

**JAMILAH WAY,**

*Plaintiff - Appellant*

**v.**

**CITY OF MISSOURI CITY; EHIMWENMA IZEHIESE IYAMU,**

*Defendants - Appellees*

Appeal from the United States District Court for the
Southern District of Texas, Houston Division; No. 4:22-CV-00539

## BRIEF OF APPELLANT

**BECK REDDEN LLP**

Bennett J. Ostdiek
bostdiek@beckredden.com
Russell S. Post
rpost@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR APPELLANT, JAMILAH WAY**

# No. 24-20144

## In the United States Court of Appeals
## For the Fifth Circuit

**JAMILAH WAY,**

*Plaintiff - Appellant*

**v.**

**CITY OF MISSOURI CITY; EHIMWENMA IZEHIESE IYAMU,**

*Defendants - Appellees*

Appeal from the United States District Court for the
Southern District of Texas, Houston Division; No. 4:22-CV-00539

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the
outcome of this case. These representations are made in order that the judges of this
Court may evaluate possible disqualification or recusal:

1.  **Plaintiff-Appellant:**        Jamilah Way

2.  **Defendants-Appellees:**       City of Missouri City
                                    Ehimwenma Izehiese Iyamu

**3.** **Counsel for Plaintiff-Appellant:**

Bennett J. Ostdiek
Russell S. Post
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, TX 77010-2010
(713) 951-3700
(713) 951-3720 – Fax

**4.** **Counsel for Defendants-Appellees:**

William S. Helfand
Sean M. Higgins
Lewis Brisbois Bisgaard & Smith, LLP
24 Greenway Plaza, Suite 1400
Houston, TX 77046
(713) 659-6767

*/s/ Bennett J. Ostdiek*
Bennett J. Ostdiek
*Attorney of Record for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Jamilah Way requests an opportunity to present oral argument and believes that oral argument will aid the decisional process. Oral argument will assist the Court in understanding how the district court's summary judgment order both ignored evidence that creates a fact issue on each of Way's claims and misapplied controlling law.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ................................................................. i

Statement Regarding Oral Argument ...................................................... iii

Table of Contents ................................................................................... iv

Index of Authorities ............................................................................... vi

Statement of Jurisdiction........................................................................ ix

Issues Presented .......................................................................................x

Introduction ..............................................................................................1

Statement of the Case................................................................................2

Summary of Argument..............................................................................10

Argument...................................................................................................12

    I.    The district court erred by granting summary judgment on Way's ADA and TCHRA discrimination claims. ...........................................12

        A.    There is evidence that the City was aware of the limitations caused by Way's anxiety. .......................................14

        B.    There is evidence that the City was aware of the limitations caused by Way's uterine fibroids. ..........................16

    II.    The district court erred by granting summary judgment on Way's ADA and TCHRA retaliation claims. ..................................................18

        A.    There is evidence that Way engaged in a protected activity both by requesting reasonable accommodations for her anxiety and by complaining of discrimination based on her anxiety. ...............................................................................20

        B.    There is evidence that Way engaged in a protected activity by requesting reasonable accommodations for her uterine fibroids. ...............................................................................22

III.    The district court erred by granting summary judgment on Way's FMLA interference claim....................................................................24

IV.    The district court erred by granting summary judgment on Way's FMLA retaliation claim.......................................................................27

Conclusion ........................................................................................................35

Certificate of Service .........................................................................................37

Certificate of Compliance ..................................................................................38

## INDEX OF AUTHORITIES

**CASES**                                                                                                                 **PAGE(S)**

*Auguster v. Vermilion Par. Sch. Bd.*,
   249 F.3d 400 (5th Cir. 2001) ...............................................................35

*B.C. v. Steak N Shake Operations, Inc.*,
   512 S.W.3d 276 (Tex. 2017) ...............................................................13

*Caldwell v. KHOU-TV*,
   850 F.3d 237 (5th Cir. 2017) ........................................................24, 33

*Campos v. Steves & Sons, Inc.*,
   10 F.4th 515 (5th Cir. 2021) .........................................................28, 33

*Evans v. City of Houston*,
   246 F.3d 344 (5th Cir. 2001) ...............................................................32

*Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*,
   730 F.3d 450 (5th Cir. 2013) ...............................................................18

*Griffin v. United Parcel Serv., Inc.*,
   661 F.3d 216 (5th Cir. 2011) .............................. 12, 14, 16, 20, 21, 23

*Hester v. Bell-Textron, Inc.*,
   11 F.4th 301 (5th Cir. 2021) .....................................24, 26, 27, 28, 33

*Jackson v. Cal-W. Packaging Corp.*,
   602 F.3d 374 (5th Cir. 2010) ...............................................................31

*Kitchen v. BASF*,
   952 F.3d 247 (5th Cir. 2020) ...............................................................12

*Lyons v. Katy Indep. Sch. Dist.*,
   964 F.3d 298 (5th Cir. 2020) ...............................................................28

*Matson v. Sanderson Farms, Inc.*,
   388 F. Supp. 3d 853 (S.D. Tex. 2019)...............................................25

*Patton v. Jacobs Engr. Group, Inc.*,
   874 F.3d 437 (5th Cir. 2017) .................................................19, 21, 23

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000)..................................................................27, 29, 33

*Rodriquez v. Wal-Mart Stores, Inc.*,
  540 Fed. Appx. 322 (5th Cir. 2013)...........................................18, 22

*Royal v. CCC & R Tres Arboles, L.L.C.*,
  736 F.3d 396 (5th Cir. 2013) ............................................................28

*Russell v. McKinney Hosp. Venture*,
  235 F.3d 219 (5th Cir. 2000) ............................................................35

*Selenke v. Med. Imaging of Colo.*,
  248 F.3d 1249 (10th Cir. 2001) ........................................................19

*Tabatchnik v. Cont'l Airlines*,
  262 Fed. Appx. 674 (5th Cir. 2008)..................................................19

*Taylor v. Principal Fin. Group, Inc.*,
  93 F.3d 155 (5th Cir. 1996) ...........................................12, 13, 16, 18

*Tex. Dep't of Transp. v. Lara*,
  625 S.W.3d 46 (Tex. 2021)...............................................................19

*Tucker v. Unitech Training Acad., Inc.*,
  783 Fed. Appx. 397 (5th Cir. 2019)..................................................19

*Villarreal v. Tropical Tex. Behav. Health*,
  2020 WL 6867075 (S.D. Tex. Oct. 30, 2020) ..................................25

*Watkins v. Tregre*,
  997 F.3d 275 (5th Cir. 2021) ..............................................29, 32, 33

*Wheat v. Florida Par. Juvenile Justice Comm'n*,
  811 F.3d 702 (5th Cir. 2016) ...........................................................27

## STATUTES

29 U.S.C.
  § 2614(a)(1)(A)-(B) ..........................................................................25
  § 2614(a)(1)(B) .................................................................................26
  § 2615(a)(1) ......................................................................................24
  § 2617(a)(1)(A)(i)(I) .........................................................................26

42 U.S.C.
 § 12112(a) ................................................................................12
 § 12112(b)(5)(A) .......................................................................13

Tex. Labor Code
 § 21.051 ...................................................................................13
 § 21.128 ...................................................................................13

Tex. Loc. Gov't Code § 102.009(b) ..............................................34

**RULES**

FED. R. CIV. P. 56(a) .....................................................................12

**OTHER AUTHORITIES**

29 C.F.R. § 1630.2(i)-(j) .....................................................12, 14, 16

Op. Tex. Att'y Gen. No. GA-0431 (2006) ....................................34

## STATEMENT OF JURISDICTION

The district court entered a final judgment on March 26, 2024. ROA.492. Way filed a timely notice of appeal, ROA.501-02, giving this Court jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.     Did the district court err by granting summary judgment on Way's ADA and TCHRA discrimination claims on the ground that Way did not inform the City of the limitations caused by her disabilities, when there is evidence that Way did in fact inform the City of the limitations caused by both her anxiety and her uterine fibroids?

2.     Did the district court err by granting summary judgment on Way's ADA and TCHRA retaliation claims on the ground that Way did not engage in a protected activity, when there is evidence that Way requested reasonable accommodations for her anxiety and her fibroids and also filed an internal complaint about disability discrimination?

3.     Did the district court err by granting summary judgment on Way's FMLA interference claim on the ground that she was not denied any FMLA benefits, when there is evidence that Way's pay was reduced as a result of her taking FMLA leave?

4.     Did the district court err by granting summary judgment on Way's FMLA retaliation claim, when Way has established a prima facie case of retaliation and there is evidence that the City's stated reason for terminating Way was pretextual?

## INTRODUCTION

Jamilah Way worked for the City of Missouri City (the "City"). After she developed both anxiety and uterine fibroids, conditions that substantially interfered with major life activities, she informed her supervisor of the limitations caused by her conditions and requested reasonable accommodations. She also took leave under the Family and Medical Leave Act ("FMLA").

The City is legally required not to discriminate against Way based on her disabilities, not to interfere with her right to take FMLA leave, and not to retaliate against her for requesting accommodations or taking FMLA leave. However, when Way returned from leave, she discovered that her salary had been reduced. Shortly thereafter, the City fired her. Accordingly, Way sued the City under both federal and state employment laws for discrimination, retaliation, and interference.

The district court granted summary judgment for the City on all of Way's claims. The district court concluded that Way had not produced any evidence that: (1) she had informed the City of the limitations caused by her disabilities; (2) she had engaged in a protected activity; (3) she had been denied any rights under the FMLA; or (4) the City's stated reason for terminating her was pretextual.

Each of these conclusions is error. Way has produced enough evidence for a reasonable jury to find in her favor on all four of these issues. This Court should reverse the district court's summary judgment order and remand the case for trial.

## STATEMENT OF THE CASE

Plaintiff Jamilah Way was employed by Defendant City of Missouri City as the City's First Assistant City Attorney. ROA.239. Way performed her role in the City Attorney's office with distinction. For example, when the City Attorney, E. Joyce Iyamu, went on maternity leave in May 2019, Way "assumed a position of responsibility and leadership as her direct subordinate." ROA.384. When she returned from leave, Iyamu asked the City's other departments to evaluate her office's "provision of legal services" during her absence. ROA.370. In reply, she was told that under Way's interim leadership, "[t]he past few months have been outstanding from legal. The best I've encountered over the past five years." ROA.370; *see also* ROA.369.

### *After Way begins suffering from anxiety, she informs her supervisor of the limitations caused by her disability and asks for reasonable accommodations.*

However, the demands of her job began to take their toll on Way. In August 2019, she informed Iyamu in an email that she was "developing anxiety" and had scheduled a doctor's appointment to address the issue. ROA.378. In response, Iyamu acknowledged that Way "seem[ed] overwhelmed" and expressed worry that Way might feel like she was "in an ocean without a life raft." ROA.377.

Iyamu was correct to worry. In her declaration, which is attached in the record excerpts as Tab 5, Way described the myriad of ways in which anxiety affects her life:

My anxiety has a profound impact on me personally, affecting various aspects of my everyday life and work, affecting major life activities. Its presence is overwhelming, often making even the simplest tasks seem insurmountable. The constant worry and fear that accompany my anxiety disrupt my ability to focus and concentrate, leading to decreased productivity and effectiveness in my work. The physical symptoms, like a racing heart, trembling, and shortness of breath, tightening muscles, further intensify the challenges I face, making it difficult to maintain a sense of calm and composure. The never-ending cycle of anxious thoughts and heightened stress levels drains my energy and leaves me feeling exhausted, impacting my overall well-being and ability to perform at my best. I had to miss minutes, hours or days of work for treatment with doctors or physical therapy.

ROA.383 [RE 5].

The day after Way told Iyamu about her anxiety issues, Way found herself "overwhelmed and tears welled up in the presence of [Iyamu]." ROA.384. After Iyamu "sarcastically inquired as to the reason behind my emotional distress," Way asked her "for specific accommodations to allow me to cope. I asked her for clear expectations, timelines and workflows that work for everyone, and for her to provide this information in writing." ROA.384.

Way subsequently approached the City's human resources director, Martin Russell, "to express my grievances regarding [Iyamu's] treatment towards me." ROA. 385. "These concerns encompassed [Iyamu's] discriminatory actions relating to my disability." ROA.385. "In response, the City initiated an investigation into my claims, enlisting the services of" a local attorney. ROA.385; *see* ROA.427-36.

***Way subsequently begins to suffer from uterine fibroids; she again informs the City of the limitations caused by this disability and requests accommodations.***

In September 2019, barely a month after informing Iyamu of her anxiety issues, Way "started experiencing excruciating pelvic floor spasms." ROA.384. Way had to leave work to visit the emergency room, ROA.384 (¶ 13), and she was ultimately diagnosed with uterine fibroids and required to undergo a hysterectomy. ROA.383 (¶ 3).

In her declaration, Way described the impact that her uterine fibroids have had on her life:

> My uterine fibroids and subsequent hysterectomy have had a profound impact on my life, impairing major activities and affecting crucial bodily functions. The presence of fibroids has caused me to experience heavy uterine bleeding, frequent trips to the bathroom, and significant pain.
>
> These symptoms have greatly limited my ability to care for myself, sleep well, and perform effectively at work. Additionally, the fibroids have adversely affected my bladder function, leading to increased urination and discomfort….
>
> As my condition worsened, I developed anemia, requiring medical interventions like iron infusions and treatment from a hematologist. The treatments for my fibroids resulted in significant scarring and blockage of my uterine tubes, making natural conception impossible. My reproductive functions have been permanently impaired due to the fibroids. To address this, I underwent in vitro fertilization (IVF) treatment before my surgery, which brought about bloating and extreme pain. Prior to the hysterectomy, a hydrosalpinx was observed in my right fallopian tube, preventing the retrieval of any eggs from the respective ovary. The removal of the fibroid around July 24, 2020, resulted in extreme fatigue and significant pain, as the fibroid exhibited an extremely rare non-benign pathology.

> Throughout the remainder of what would be child-bearing years, I would be limited in my ability to reproduce. Furthermore, despite the hysterectomy, I continue to have ongoing pain….

ROA.383-84 (internal paragraph numbering omitted).

Way informed the City about the limitations that resulted from her uterine fibroids on multiple occasions. First, on the day after Way visited the emergency room, Iyamu came into Way's office and asked her questions about her diagnosis and treatment. ROA.384 (¶ 14). Way responded by telling Iyamu "about the severity of my pelvic floor spasms," that her condition required "pain management that could only be administered in the hospital," and that she had been "prescribed several medicines in an attempt to control the spasms and pain." ROA.384. Way then proceeded to "line[] the bottles up on my desk" and explain to Iyamu "what the medication was for and why I was being prescribed them." ROA.384.

Second, in June 2020, Way submitted a "medical certification and written accommodation request" to the City's human resources director. ROA.385. Way specifically told the human resources director that she "wanted an accommodation based on the disabilities listed in the certification." ROA.385. "The certification clearly provided that I suffered from heavy uterine bleeding from fibroids, requiring surgery and a related egg retrieval." ROA.385; *see also* ROA.314-20.

In addition to informing the City of the limitations caused by her fibroids, Way requested accommodations from the City to account for these limitations. The

"written accommodation request" that Way personally handed to the human resources director, ROA.385, contained a request for three specific accommodations:

> (1) When I am attending appointments, I would like to flex my schedule to make time for my appointments.
> (2) From … 07-02-2020 to 07-31-2020, I would like to work remotely.
> (3) I will request leave during this period for my surgery and appointments that may be longer than most.

ROA.388. The human resources director later acknowledged in an email to Iyamu that he had "received notice of Reasonable Accommodations for Jamilah." ROA.389.

### Way eventually takes FMLA leave; when Way returns from leave, she discovers that her salary has been reduced; after she takes another period of FMLA leave, the City terminates her under the pretext of a budgetary reallocation.

In October 2020, Way took a leave of absence from the City under the Family and Medical Leave Act. ROA.385 (¶ 17). Upon returning to work in December, she "discovered a sudden reduction in my salary." ROA.385. After "conduct[ing] a thorough investigation," Way learned "that Missouri City had incorrectly classified my FMLA status, leading to a … salary decrease." ROA.385.

Shortly after Way returned to work, "unexpected circumstances arose," and she was required to take four additional days of FMLA leave for "another procedure" to treat her uterine fibroids. ROA.385.

Way's FMLA leave ended on December 31, 2020. ROA.385 (¶ 18). Less than three weeks later, on January 19, 2021, she was informed by letter that the City Council had "eliminate[d]" her position and that her employment with the City was "terminated," effective immediately. ROA.373.

In its January 2021 termination letter, the City claimed that Way's position was being eliminated because Iyamu had informed the City Manager that having a First Assistant City Attorney was "not a practical application of the City's resources in the operation of that department." ROA.373. However, Iyamu allegedly made this report in August 2019, ROA.373, *almost 18 months before Way was terminated*. If budgetary concerns were the real reason behind Way's termination, it would make no sense for the City to terminate her almost a year and a half after receiving this report.

Moreover, in September 2020, Iyamu solicited an outside analysis of the law department's budget and staffing. ROA.391, 395. That report specifically found: (1) that the law department's budget was "substantially lower than … similar size cities"; (2) that "the number of attorney staff" employed by the department "seems reasonable"; and (3) that, if anything, "the department is understaffed" and should hire additional "support staff." ROA.395. Thus, there is evidence that the City's claim that it terminated Way for budgetary reasons, ROA.235, 280, is a pretext. The fact that Way was terminated 18 months after Iyamu made a debunked complaint

about the budget but less than three weeks after she returned from FMLA leave would allow a reasonable jury to find that Way's termination was retaliatory.

### *Way files suit, and the district court grants summary judgment in favor of the City.*

In the aftermath of her termination, Way brought suit against both the City and Iyamu. ROA.8. The City and Iyamu filed a motion to dismiss, ROA.55, which the Court granted in part and denied in part, ROA.163. The Court also granted Way leave to amend her complaint. ROA.171. Way's amended complaint names only the City as a defendant and raises claims for discrimination in violation of the Americans with Disabilities Act ("ADA") (including through a failure to accommodate Way's disabilities), retaliation in violation of the ADA, interference in violation of the FMLA, retaliation in violation of the FMLA, and discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"). ROA.177, 192-95.

The City moved for summary judgment on all of Way's claims, ROA.207-37, and the district court granted the motion. ROA.482-91.

First, the court granted summary judgment on Way's ADA and TCHRA discrimination claims on the ground that "Plaintiffs anxiety and uterine fibroids were not qualifying disabilities because the limitations of these impairments were not known to the City." ROA.486.

Next, regarding Way's ADA and TCHRA retaliation claims, the court concluded that "Plaintiff did not engage in any protected activities." ROA.487.

For Way's FMLA interference claim, the court determined that the City was entitled to summary judgment because although Way's pay had been reduced as a result of her FMLA leave, nonetheless "all of Plaintiffs FMLA leave requests were granted and … she took the entirety of the leave sought." ROA.489.

Finally, the court granted summary judgment on Way's FMLA retaliation claim on the ground that she "fails to put forth any arguments or evidence showing that Defendant's reason for her termination is pretextual." ROA.491.

Way filed a timely notice of appeal. ROA.501-02.

## SUMMARY OF ARGUMENT

The district court's order granting summary judgment on all four of Way's claims should be reversed. The summary judgment order both ignores record evidence and misapplies controlling law.

First, the district court granted summary judgment on Way's ADA and TCHRA discrimination claims on the ground that "Plaintiff's anxiety and uterine fibroids were not qualifying disabilities because the limitations of these impairments were not known to the City." ROA.486. However, the record makes it clear that the limitations caused by Way's anxiety and uterine fibroids in fact *were known* to the City.

Second, the district court granted summary judgment on Way's ADA and TCHRA retaliation claims on the ground that "Plaintiff did not engage in the requisite protected activity to bring a retaliation claim pursuant to the ADA or the TCHRA." ROA.488. However, requesting reasonable accommodations is a protected activity, and a reasonable jury could find that Way requested reasonable accommodations for her anxiety and uterine fibroids. A jury could also find that Way complained about discrimination, another protected activity.

Third, the district court granted summary judgment on Way's FMLA interference claim on the ground that "all of Plaintiff's FMLA leave requests were granted and … she took the entirety of the leave sought." ROA.489. The court

acknowledged that Way had experienced an "erroneous reduction in her salary" as a result of her FMLA leave, but the court concluded that this evidence was irrelevant. ROA.489. This conclusion was error. Both the plain language of the statute and Fifth Circuit precedent makes it clear that (1) a plaintiff can bring an interference claim if they are denied *any right* under the FMLA and (2) an employee who has taken FMLA leave has the right to be restored to the same job *with the same salary*. Way can bring an interference claim based on the denial of this right.

Fourth, the district court granted summary judgment on Way's FMLA retaliation claim on the ground that "Plaintiff fails to put forth any arguments or evidence showing that Defendant's reason for her termination is pretextual." ROA.491. In fact, the record contains ample evidence showing that Defendants stated budgetary reasons for terminating Way were a pretext. A budget analysis commissioned by Way's supervisor found that the City's law department was actually under budget, and Way was suspiciously terminated 18 months after the budgetary concerns were allegedly raised but less than a month after she returned from FMLA leave. The Fifth Circuit has repeatedly held that such evidence is sufficient to survive summary judgment.

In short, Jamilah Way is entitled to a trial on her ADA, TCHRA, and FMLA claims. The district court's order granting summary judgment should be reversed.

**ARGUMENT**

The district court erred by granting summary judgment on Way's ADA, TCHRA, and FMLA claims. "We review a district court's grant of summary judgment *de novo*." *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020). Summary judgment is only appropriate "where the movant demonstrates 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (citation omitted). Because a reasonable jury could find in favor of Way on each of her claims, the district court's summary judgment order should be reversed, and this case should be remanded for trial.

## I.   The district court erred by granting summary judgment on Way's ADA and TCHRA discrimination claims.

Way raised discrimination claims against the City under both the ADA and TCHRA. ROA.192, 194. "The ADA expansively prohibits discrimination in employment against persons with a disability." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 161 (5th Cir. 1996) (citing 42 U.S.C. § 12112(a)). "A disability is a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (cleaned up)); *see also* 29 C.F.R. § 1630.2(i)-(j) (broadly defining both "major life activities" and "substantially limits"). An employer can discriminate

for purposes of the ADA by, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The TCHRA likewise prohibits discrimination on the basis of disability and requires employers to reasonably accommodate disabilities. Tex. Labor Code §§ 21.051, 21.128.[1]

"To prove discrimination, an employee must show that the employer knew of such employee's substantial physical or mental limitation." *Taylor*, 93 F.3d at 163. The district court concluded that Way did not satisfy this requirement, granting summary judgment on Way's discrimination claims on the ground that "Plaintiff's anxiety and uterine fibroids were not qualifying disabilities because the limitations of these impairments were not known to the City." ROA.486.

However, the summary judgment record makes it clear that fact issues exist regarding whether the City was aware of the limitations caused by each of Way's disabilities. Accordingly, the district court erred by granting summary judgment on Way's ADA and TCHRA discrimination claims.[2]

---

[1] Because "Texas courts look to analogous federal law in applying the [TCHRA]," *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017), the district court correctly analyzed Way's TCHRA claims concurrently with her ADA claims. *See* ROA.485 n.2.

[2] Additionally, the district court's summary judgment order conflated the concepts of "disability" and "discrimination" by stating that City's supposed unawareness of the limitations caused by Way's conditions means that her conditions are not "qualifying disabilities." ROA.486. The question of whether the plaintiff's employer knew about the plaintiff's disability is relevant to whether the plaintiff experienced *discrimination*, not to whether the plaintiff is disabled. *See Taylor*, 93 F.3d at 163.

## A.   There is evidence that the City was aware of the limitations caused by Way's anxiety.

As the district court correctly acknowledged, there is evidence that Way's anxiety substantially limits one or more of her major life activities, meaning that it qualifies as a disability under the ADA. *See* ROA.486; *see also Griffin*, 661 F.3d at 222; 29 C.F.R. § 1630.2(i)-(j). Way explained in her declaration that "the constant worry and fear that accompany my anxiety disrupt my ability to focus and concentrate, leading to decreased productivity and effectiveness in my work." ROA.383. "The physical symptoms, like a racing heart, trembling, and shortness of breath, tightening muscles, further intensify the challenges I face, making it difficult to maintain a sense of calm and composure." ROA.383. Ultimately, for Way "[t]he never-ending cycle of anxious thoughts and heightened stress levels drains my energy and leaves me feeling exhausted, impacting my overall well-being and ability to perform at my best." ROA.383.

However, the district court erred by concluding that "Plaintiff never states when or how she made her employer aware of such limitations." ROA.486. Way stated in her declaration that "[o]n August 14, 2019, feeling an immense sense of being overwhelmed, I openly communicated my concerns to [Iyamu]." ROA.384. Specifically, Way "expressed how the current circumstances were significantly impacting my anxiety levels and emphasized that I had taken a proactive step to seek help by scheduling an appointment for professional assistance with my anxiety."

ROA.384; *see also* ROA.378 (email to Iyamu explaining that Way was "developing anxiety" and had scheduled a doctor's appointment to address the condition).

Iyamu received the message. She responded to Way's communications about her anxiety by acknowledging that Way "seem[ed] overwhelmed, as exhibited in the meeting earlier this week when you laid your head on the conference table." ROA.377. Iyamu expressed concern that Way felt like she was "in an ocean without a life raft." ROA.377.

Way's communications with her employer about the limitations resulting from her anxiety did not stop there. The day after Way first told Iyamu about her anxiety, "due to the immense pressure of working in a highly turbulent environment, I found myself overwhelmed and tears welled up in the presence of [Iyamu]." ROA.384. After Iyamu "sarcastically inquired as to the reason behind my emotional distress," Way asked her "for specific accommodations to allow me to cope. I asked her for clear expectations, timelines and workflows that work for everyone, and for her to provide this information in writing." ROA.384.

In short, there is evidence that Way directly informed her supervisor (1) that she had anxiety; (2) that she was seeking medical help for her condition; and (3) that her anxiety limited her by making it so that she could not cope with the requirements of her job without certain accommodations regarding expectations, timelines, and workflows. There is also evidence that Way's supervisor explicitly recognized that

Way was in "emotional distress," "overwhelmed," and "in an ocean without a life raft," showing that she understood the limitations caused by Way's anxiety. The district court therefore erred when it granted summary judgment on Way's discrimination claims on the ground that "Plaintiff failed to adduce any summary judgment evidence showing that she told the City about the limitations resulting from her alleged anxiety." ROA.486. Rather, based on the summary judgment evidence, a reasonable jury could find that Way's employer knew about the limitations caused by Way's anxiety, as required to prove Way's discrimination claim. *See Taylor*, 93 F.3d at 163.

### B.   There is evidence that the City was aware of the limitations caused by Way's uterine fibroids.

As with Way's anxiety, the district court correctly acknowledged that Way's uterine fibroids severely limit one or more of her major life activities, meaning that they qualify as a disability. *See* ROA.486; *see also Griffin*, 661 F.3d at 222; 29 C.F.R. § 1630.2(i)-(j). Way explained in her declaration that in September 2019 she "started experiencing excruciating pelvic floor spasms." ROA.384. Way was eventually diagnosed with uterine fibroids and underwent a hysterectomy. ROA.383 (¶ 3). Way's fibroids have caused her "to experience heavy uterine bleeding, frequent trips to the bathroom, and significant pain." ROA.383. Way declared that "[t]hese symptoms have greatly limited my ability to care for myself, sleep well, and perform effectively at work. Additionally, the fibroids have adversely

affected my bladder function, leading to increased urination and discomfort." ROA.383. Further, Way's "reproductive functions have been permanently impaired due to the fibroids." ROA.383.

However, the district court again misread the record when it concluded that "there is no evidence that the City knew about the limitations resulting" from "Plaintiff's fibroids." ROA.487. Rather, when Way first started experiencing pelvic spasms, she "tearfully approached [Iyamu] and informed her of the urgent need for me to seek immediate medical attention at the emergency room." ROA.384. The next day, after Iyamu and another colleague "entered my office and proceeded to conduct an intrusive interrogation," Way "explained to them about the severity of my pelvic floor spasms, requiring pain management that could only be administered in the hospital." ROA.384. Way also "told them that the doctors conducted a series of test[s] and … explained that I was prescribed several medicines in an attempt to control the spasms and pain." ROA.384. Way "then lined the bottles up on my desk" and "explained what the medication was for and why I was being prescribed them." ROA.384.

On top of these interactions with Iyamu, Way later submitted a "medical certification and written accommodation request" to the City's director of human resources. ROA.385. "The certification clearly provided that I suffered from heavy uterine bleeding from fibroids, requiring surgery and a related egg retrieval."

ROA.385. The human resources director then emailed Iyamu to inform her that he had "received notice of Reasonable Accommodations for Jamilah," ROA.389, confirming that both he and Iyamu were aware of Way's accommodation request.

Based on this evidence, a reasonable jury could find that Way informed the City of the limitations resulting from her uterine fibroids, as required to prove her discrimination claim. *See Taylor*, 93 F.3d at 163. The district court therefore erred when it granted summary judgment on Way's discrimination claims on the ground that "there is no evidence that the City knew about the limitations resulting" from "Plaintiff's fibroids." ROA.487.

## II.   The district court erred by granting summary judgment on Way's ADA and TCHRA retaliation claims.

Way also raised retaliation claims under the ADA and TCHRA. ROA.192, 194. "To establish a prima facie case of retaliation under the ADA …, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "An employee that files an internal complaint of discrimination engages in a protected activity." *Rodriquez v. Wal-Mart Stores, Inc.*, 540 Fed. Appx. 322, 328 (5th Cir. 2013). Additionally, "requesting a reasonable accommodation may

18

constitute engaging in a protected activity under the ADA." *Tucker v. Unitech Training Acad., Inc.*, 783 Fed. Appx. 397, 400 (5th Cir. 2019).

Importantly, in order to request an accommodation, "the employee need not utter any magic words." *Patton v. Jacobs Engr. Group, Inc.*, 874 F.3d 437, 444 (5th Cir. 2017). Moreover, "in order to prosecute an ADA retaliation claim, plaintiff need not show that she suffers from an actual disability." *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008) (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001)). As with discrimination claims, the same rules that govern ADA retaliation claims also apply to TCHRA retaliation claims. *See Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58 (Tex. 2021).

The district court granted summary judgment on Way's retaliation claims on the ground that Way did not satisfy the first element of her claim. According to the district court, "Plaintiff did not engage in the requisite protected activity to bring a retaliation claim pursuant to the ADA or the TCHRA." ROA.488. However, the summary judgment record makes it clear that, at a minimum, fact issues exist regarding whether Way requested reasonable accommodations for her anxiety and uterine fibroids—again, she was not required to use any magic words. *Patton*, 874 F.3d at 444. There is also evidence that Way filed an internal complaint of discrimination based on her anxiety. Accordingly, the district court erred by granting summary judgment on Way's retaliation claims.

19

**A.**    **There is evidence that Way engaged in a protected activity both by requesting reasonable accommodations for her anxiety and by complaining of discrimination based on her anxiety.**

Although the district court acknowledged that requesting a reasonable accommodation is a protected activity, ROA.487-88, the district court concluded that Way did not request a reasonable accommodation for her anxiety. The district court stated that "Plaintiff notifying her supervisor that she is developing anxiety and has a doctor's appointment scheduled to address it hardly rises to notifying her employer that she needs an accommodation for anxiety." ROA.488. The court reasoned that since "anxiety is not an open, obvious, and apparent disability, Plaintiff bore the burden of specifically identifying her disability, the resulting limitations, and the reasonable accommodations she needed." ROA.488. According to the district court, "[t]here is no evidence that Plaintiff met her burden." ROA.488.

The district court was correct that "where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Griffin*, 661 F.3d at 224 (cleaned up). However, there is evidence that Way met this burden. As explained above, Way told Iyamu that she had anxiety and was seeking medical treatment, and Iyamu indicated that she understood the limitations caused by Way's anxiety. *See* pp. 14-15, *supra*. Further, Way explained

in her declaration that "[i]n an effort to accommodate my disability of anxiety, I asked [Iyamu] for *specific accommodations* to allow me to cope. I asked her for clear expectations, timelines and workflows that work for everyone, and for her to provide this information in writing." ROA.384 (emphasis added); *see also* ROA.247.

In short, Way presented evidence that she specifically told her supervisor that she had anxiety, that her supervisor understood the limitations caused by her anxiety, and that she directly asked the supervisor for three specific reasonable accommodations for her anxiety. Based on this evidence, a reasonable jury could find that Way satisfied her burden to specifically identify her disability, the resulting limitations, and the reasonable accommodations she needed—especially since magic words are not required. *See Griffin*, 661 F.3d at 224; *Patton*, 874 F.3d at 444. Accordingly, the district court erred by granting summary judgment on Way's retaliation claims on the ground that Way did not engage in a protected activity with respect to her anxiety. If more were required to request an accommodation, few employees could ever invoke the protections of the ADA and TCHRA.

Way also engaged in a second protected activity with respect to her anxiety. In November 2019, she complained to the City's human resources director about Iyamu's "discriminatory actions relating to my disability…. In response, the City initiated an investigation into my claims, enlisting the services of" a local attorney. ROA.385; *see* ROA.427-36. Way's complaint about discrimination is a protected

activity. *See Rodriquez*, 540 Fed. Appx. at 328. For this reason too, the district court erred by granting summary judgment on the ground that Way did not engage in a protected activity with respect to her anxiety.

### B. There is evidence that Way engaged in a protected activity by requesting reasonable accommodations for her uterine fibroids.

The district court also concluded that Way did not request reasonable accommodations for her uterine fibroids. ROA.488. However, the district court once again misread the record.

As Way explained in her declaration, on June 15, 2020, she personally handed the City's human resources director a "written accommodation request." ROA.385. Way requested three specific accommodations:

> (1) When I am attending appointments, I would like to flex my schedule to make time for my appointments.
> (2) From … 07-02-2020 to 07-31-2020, I would like to work remotely.
> (3) I will request leave during this period for my surgery and appointments that may be longer than most.

ROA.388.

According to the district court, Way's "handwritten note" requesting accommodations "fails to meet the mark because it does not identify her alleged disability, the resulting limitations, or the necessary accommodations related thereto." ROA.488. However, the district court appears to have ignored the evidence showing that at the same time that Way handed the human resources director her written accommodations request, she also handed the director "my medical

certification." ROA.385. Way then specifically told the human resources director that she "wanted an accommodation based on the disabilities listed in the certification." ROA.385. Crucially, "[t]he certification clearly provided that I suffered from heavy uterine bleeding from fibroids, requiring surgery and a related egg retrieval." ROA.385; *see also* ROA.314-320.

Based on this evidence, a reasonable jury could find that Way's accommodation request satisfied her burden of identifying her alleged disability, the resulting limitations, and the necessary accommodations. *See Griffin*, 661 F.3d at 224; *Patton*, 874 F.3d at 444 (magic words are not required). Even if the district court is correct that Way's handwritten request, by itself, "fails to meet the mark," ROA.488, the combination of the handwritten request, the medical certification, and the personal conversation with the human resources director is more than enough evidence to create a fact issue regarding whether Way sufficiently requested a reasonable accommodation for her uterine fibroids—indeed, it is hard to imagine what more Way could have done to ask for an accommodation. Accordingly, the district court erred by granting summary judgment on Way's retaliation claims on the ground that Way did not engage in a protected activity with respect to her uterine fibroids.

**III.    The district court erred by granting summary judgment on Way's FMLA interference claim.**

In addition to her ADA and TCHRA claims, Way raised an interference claim under the FMLA. ROA.193. The FMLA makes it "'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021) (quoting 29 U.S.C. § 2615(a)(1)). "To establish a prima facie case of interference under the FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

The district court granted summary judgment on Way's FMLA interference claim on the ground that Way could not show the fifth element—that the City had denied her a benefit that she was entitled to under the FMLA. ROA.489. The court reasoned that "all of Plaintiff's FMLA leave requests were granted and … she took the entirety of the leave sought." ROA.489.

However, the right to take leave is only one of the benefits that the FMLA grants to employees. Employees who take FMLA leave also have the right, on their return from leave, "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent

24

position *with equivalent employment benefits, pay, and other terms and conditions of employment.*" 29 U.S.C. § 2614(a)(1)(A)-(B) (emphasis added).

In this case, when Way returned from leave, she "discovered a sudden reduction in my salary." ROA.385. After Way "conducted a thorough investigation," "[i]t became evident that Missouri City had incorrectly classified my FMLA status, leading to a lack of proper notice regarding the salary decrease. Additionally, there were inaccuracies in how my time was coded" and "unwarranted threats of placing me on unpaid administrative leave." ROA.385. Thus, there is evidence that even if Way received all of the FMLA leave that she requested, her right to be restored to an equivalent position with equivalent pay upon returning from leave was denied.

The district court's summary judgment order acknowledged evidence that Way had "encountered hostility regarding her repeated need for FMLA leave" and that she had ultimately experienced an "erroneous reduction in her salary." ROA.489. However, the court disregarded this evidence, stating that "[f]or discouragement to be actionable under the FMLA, the plaintiff must either forego taking leave or shorten his or her leave because of the discouragement." ROA.489.

The district court erred as a matter of law by concluding that an employee whose pay is reduced after taking FMLA leave cannot bring an FMLA interference claim. The district court relied on *Villarreal v. Tropical Tex. Behav. Health,* 2020 WL 6867075, at *4 (S.D. Tex. Oct. 30, 2020), and *Matson v. Sanderson Farms, Inc.,*

388 F. Supp. 3d 853, 874 (S.D. Tex. 2019). *See* ROA.489. However, the issue in those cases was whether the employer had pressured the employee into taking less leave. Neither involved employees whose pay had been reduced as a result of their FMLA leave. Accordingly, both *Villarreal* and *Matson* are inapposite.

Rather, this case is controlled by the plain language of the FMLA, which makes it clear that an employee who takes leave is entitled "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" and that an employer who violates this requirement is liable to the employee for the "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. §§ 2614(a)(1)(B), 2617(a)(1)(A)(i)(I). As this Court has previously held in reversing the dismissal of an FMLA interference claim, "[t]o plead the fifth element of a prima facie interference claim, Hester was required to allege that Bell-Textron denied him a benefit to which he was entitled under the FMLA. He did exactly that by alleging that Bell-Textron interfered with his right to reinstatement by failing to restore him to his position upon the termination of his FMLA leave." *Hester*, 11 F.4th at 307 (citations omitted).

In short, there is evidence that the City interfered with Way's FMLA right to be restored to an equivalent position by reducing Way's salary after she returned from FMLA leave. Accordingly, the district court erred by granting summary

judgment on Way's FMLA interference claim on the ground that Way was not denied any benefit under the FMLA.

## IV. The district court erred by granting summary judgment on Way's FMLA retaliation claim.

Finally, Way raised an FMLA retaliation claim. ROA.194. FMLA retaliation claims "are analyzed under the *McDonnell Douglas* burden-shifting framework." *Wheat v. Florida Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). "That framework requires the employee first to set out a prima facie case of retaliation, which she may do by establishing that: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action." *Id.* "If the plaintiff states a prima facie claim, 'the burden shifts to the employer to articulate a legitimate nondiscriminatory or nonretaliatory reason for the termination.' 'Once the employer has done so, the plaintiff must show by a preponderance of the evidence that the employer's reason is a pretext for … retaliation.'" *Hester*, 11 F.4th at 305 (citations omitted). The combination of "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability," even without additional evidence of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000); *see also id.* at 146 ("It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." (cleaned up)).

Here, the district court correctly "assume[d]" that Way had "establish[ed] a *prima facie* retaliation case." ROA.490. After all, as the court observed, "[i]t is undisputed that Plaintiff was protected under the FMLA." ROA.490. Moreover, after Way took FMLA leave in October of 2020 and extended her leave in December 2020, she was terminated in January 2021. ROA.385 (¶¶ 17-20), 373. Way's termination is undoubtedly a materially adverse action, *see Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("It is clear that an adverse employment action occurred here—Royal was fired."), and the temporal proximity between her leave and her termination is by itself enough to establish a prima facie causal connection. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 (5th Cir. 2020) ("'[V]ery close' temporal proximity is sufficient to establish the 'causal connection' element of [a retaliation plaintiff's] prima facie case."); *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 528 (5th Cir. 2021) ("[T]he adverse employment action occurred approximately one month after Campos's FMLA leave expired, and we conclude that a month is close enough in time to create a causal connection.").

However, because the City claimed that "the city council approved the elimination of the position Plaintiff held as part of a budgetary restructure," ROA.235, the burden shifted back to Way to show that the City's claim that she was terminated for budgetary purposes is actually a pretext for retaliation. *Hester*, 11 F.4th at 305. The district court granted summary judgment on the ground that

28

"Plaintiff fails to put forth any arguments or evidence showing that Defendant's reason for her termination is pretextual." ROA.491. That conclusion was error.

"[E]vidence need not be dispositive of pretext to be probative in determining pretext." *Watkins v. Tregre*, 997 F.3d 275, 286 n.7 (5th Cir. 2021) (citation omitted). "Pretext can be proven by *any* evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Id.* (emphasis added). "The trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (cleaned up).

 Here, the record contains ample evidence that the City's stated reason for terminating Way was pretextual. The district court did not acknowledge any of this evidence of pretext in its summary judgment order.

In support of its claim that Way's position was eliminated because of budgetary concerns, the City pointed only to the letter that Way received from the City's human resources director in January 2021 informing her of her termination. ROA.235 (citing ROA.280). The letter states that "[i]n August of 2019, the City Attorney reported to the City Manager that the position of First Assistant City Attorney was not a practical application of the City's resources in the operation of that department." ROA.280. The letter then explains that "[o]n January 11, 2021, the City Council took action during a special council meeting to eliminate the position

of First Assistant City Attorney effective January 12, 2021 and to re-deploy the budget for that position to create the position of Junior Associate Assistant City Attorney in the City Attorney's Office." ROA.280. This letter is the entirety of the evidence supporting the City's claim that Way's position was eliminated for budgetary reasons. *See* ROA.235.

However, the record also shows that in September 2020 (more than a year after Iyamu allegedly raised her budgetary concerns to the City Manager), Iyamu "reach[ed] out" to Charles W. Thompson, Jr., the Executive Director and General Counsel of the International Municipal Lawyers Association, and asked him to review the "budget and staffing" of the City Attorney's office. ROA.391; *see also* ROA.297. As Iyamu explained in her deposition, she felt "that we needed more than what we had" and had reached out to Thompson in order to receive "[r]ecommendations." ROA.393.

The report that the City received from Thompson flatly contradicts the City's claim that Way's position needed to be eliminated for budgetary reasons. Thompson found that for the 2019 and 2020 fiscal years, the City's "law department budget as a ratio to the total city budget is less than a half of a percent and about one percent of the general fund budget," which is "in-keeping with many other local government[s]." ROA.395. Additionally, "[t]he cost per capita of the legal department for the city seems to be about $8.50 *and that number is substantially*

*lower than my quick review of similar size cities*." ROA.395 (emphasis added).

Thompson explained that "finding that the costs per capita are below the norm

suggest[s] a need to evaluate if the department is *understaffed*." ROA.395 (emphasis

added). Accordingly, rather than recommend that the City cut the First Assistant City

Attorney position, Thompson suggested that "your office does not have sufficient

support staff." ROA.395. Thompson also specifically concluded that the office's

"number of attorney staff seems reasonable." ROA.395.

Again, the City's summary judgment motion only cited the January 2021

termination letter as evidence of a budgetary reason for termination, and that letter

only cited Iyamu's supposed August 2019 report to the City Manager regarding "the

City's resources." ROA.235, 280. But whatever budgetary concerns Iyamu might

have had in August 2019, Thompson's September 2020 report (which was issued

several months before Way's termination) made it clear to the City that the law

department's budget was reasonable and that rather than eliminating or downgrading

attorney positions, the department should be focused on hiring additional support

staff. Accordingly, a reasonable jury could find that the City did not have legitimate

budgetary reasons for terminating Way in January 2021 and that the City's stated

reason for terminating Way was therefore pretextual. *See Jackson v. Cal-W.*

*Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) ("A plaintiff may show

pretext … by showing that the employer's proffered explanation is false or unworthy

of credence." (cleaned up)); *Watkins*, 997 F.3d at 285 ("[T]his evidence raises a genuine dispute as to whether 'sleeping on the job' is the 'real reason' Sheriff Tregre fired Watkins. A reasonable jury could infer unlawful retaliation from the falsity of Sheriff Tregre's explanation." (citation omitted)).

The suspicious timeline surrounding Way's termination is further evidence of pretext. *Almost 18 months* passed between Iyamu's alleged report to the City Manager about budgetary concerns in August 2019 and Way's termination in January 2021. ROA.280. The City adopted multiple new budgets during this time,[3] and it could have ceased funding Way's position in any one of them. However, Way's termination did not occur until after she took FMLA leave in October and December 2020, and her termination was *almost immediate* after she returned from leave. ROA.373, 385. When combined with the evidence discussed above showing that the City did not have a legitimate budgetary reason for terminating Way in the first place, the fact that the City terminated Way a year and a half after receiving Iyamu's report but within weeks of Way taking FMLA leave confirms that a reasonable jury could find that the City's alleged budgetary reasons for Way's termination are pretextual and that the City's real motives were retaliatory. *See Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001) ("[T]he combination of

---

[3]  Section 9.03 of the City's charter requires it to adopt annual budgets. *See* https://www.missouricitytx.gov/DocumentCenter/View/426/Home-Rule-Charter?bidId=.   *See also, e.g.*, ROA.425 (agenda for meeting where the City's 2022 budget would be presented).

suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." (citation omitted)); *Watkins*, 997 F.3d at 285-86 ("When combined with the discredited reason of 'sleeping on the job,' the near-immediate temporal proximity of the discharge to the protected activity leaves us with no room to doubt that Watkins has carried her summary-judgment burden.").[4]

Further, although budgetary concerns were the City's only stated reason for terminating Way, ROA.280, the City's summary judgment motion begins with a two-page discussion of Way's alleged "performance issues." ROA.212-14. The City's inconsistent, after the fact explanations for why Way was terminated are themselves evidence of pretext. *See, e.g.*, *Campos*, 10 F.4th at 530 ("[E]xplanations for the termination that postdate the actual decision are 'potentially manufactured' and indicative of pretext." (citation omitted)); *Caldwell*, 850 F.3d at 243 n.5 ("An employer's inconsistent explanations for its employment decisions at different times are probative of whether those explanations are pretextual." (cleaned up)).

Finally, it is notable that the City terminated Way in a procedurally irregular manner. The City's termination letter to Way stated that "the City Council took action during a special council meeting to eliminate the position of First Assistant

---

[4] *See also Hester*, 11 F.4th at 306 (plaintiff established a prima facie case of retaliation because "Bell-Textron did not fire Hester at the time of his pre-leave workplace performance issues in June and October 2018 to do so—approximately two months into Hester's FMLA leave"); *Reeves*, 530 U.S. at 143 (evidence establishing prima facie case can also be used to find pretext).

City Attorney effective January 12, 2021 and to re-deploy the budget for that position to create the position of Junior Associate Assistant City Attorney in the City Attorney's Office." ROA.280. However, after a municipal budget is approved, a municipality's "governing body may spend municipal funds only in strict compliance with the budget, except in an emergency." Tex. Loc. Gov't Code § 102.009(b). Moreover, Section 9.03 of the City's charter requires the City to adopt its budget "by ordinance,"[5] and a municipality with such a requirement "may amend its budget ordinance only by adopting an[other] ordinance." Op. Tex. Att'y Gen. No. GA-0431, at *2 (2006). Thus, in order to "re-deploy" the budget for Way's position, the City needed to pass an ordinance amending the budget.

The City effectively conceded below that it never adopted such an ordinance. It argued instead that "the City could modify the annual budget, provided they do not change expenditures, without going to the processes provided by Texas Local Government Code §§ 102.006 and 102.009." ROA.463. But the City did not cite any legal authority in support of this argument, which flies in the face of the requirement that municipal funds may be spent "only in *strict compliance* with the budget, except in an emergency." Tex. Loc. Gov't Code § 102.009(b) (emphasis added). Tellingly, rather than pressing the argument that its actions were procedurally proper, the City

---

[5] *Available at* https://www.missouricitytx.gov/DocumentCenter/View/426/Home-Rule-Charter?bidId=.

quickly pivoted to arguing that the fact that it "failed to follow proper procedural steps under Texas law" in the way it terminated Way is simply no evidence of pretext. ROA.463. But this Court has held that an "employer's failure to follow internal procedures in terminating the employee" can constitute "evidence of pretext." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 n.8 (5th Cir. 2001). This rule is especially true in cases like this one, where procedural irregularities are combined with other substantial evidence of pretext. *See, e.g.*, *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 (5th Cir. 2000) (there was sufficient evidence of pretext where, among other evidence, "Jacobsen conceded that Russell was not given a formal oral warning, a written warning, or a 'corrective action plan,' all of which are required by Homecare's own internal procedures").

In short, there is ample evidence that the City's stated budgetary reason for terminating Way was pretextual. Accordingly, the district court erred by granting summary judgment on Way's FMLA retaliation claim on the ground that Way did not put forth any evidence of pretext.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of a take-nothing summary judgment in favor of the City of Missouri City and remand the case for trial on Way's ADA, TCHRA, and FMLA claims.

Jamilah Way requests all other relief to which she is entitled.

Respectfully submitted,

**BECK REDDEN LLP**

By:    */s/ Bennett J. Ostdiek*
       Bennett J. Ostdiek
       bostdiek@beckredden.com
       Russell S. Post
       rpost@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR APPELLANT,
JAMILAH WAY**

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024 a copy of the foregoing Brief of Appellant was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic filing system to all counsel of record.

William S. Helfand
bill.helfand@lewisbrisbois.com
Sean M. Higgins
sean.higgins@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, TX 770464

*Attorneys for Appellees*

*/s/ Bennett J. Ostdiek*
Bennett J. Ostdiek
*Attorney of Record for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 8,325 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point font.

Dated: June 27, 2024

*/s/ Bennett J. Ostdiek*
Bennett J. Ostdiek
*Attorney of Record for Appellant*