## No. 24-20144

# In the United States Court of Appeals
# For the Fifth Circuit

---

**JAMILAH WAY,**

*Plaintiff - Appellant*

**v.**

**CITY OF MISSOURI CITY; EHIMWENMA IZEHIESE IYAMU,**

*Defendants - Appellees*

---

Appeal from the United States District Court for the
Southern District of Texas, Houston Division; No. 4:22-CV-00539

---

# REPLY BRIEF OF APPELLANT

---

**BECK REDDEN LLP**

Bennett J. Ostdiek
bostdiek@beckredden.com
Russell S. Post
rpost@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR APPELLANT, JAMILAH WAY**

TABLE OF CONTENTS

PAGE

Table of Contents ............................................................................. i

Index of Authorities ...................................................................... iii

Introduction .................................................................................... 1

Argument in Reply .......................................................................... 2

I.    The district court erred by granting summary judgment on Way's ADA and TCHRA discrimination claims. ............................................ 2

      A.    There is evidence that the City was aware of the limitations caused by Way's anxiety. ........................................ 2

      B.    There is evidence that the City was aware of the limitations caused by Way's uterine fibroids. ............................ 5

II.   The district court erred by granting summary judgment on Way's ADA and TCHRA retaliation claims. .................................................. 7

      A.    There is evidence that Way engaged in protected activities. ................................................................................. 8

      B.    The City's alternative grounds do not provide a basis for affirmance. .................................................................. 9

III.  The district court erred by granting summary judgment on Way's FMLA interference claim. .................................................................. 10

IV.   The district court erred by granting summary judgment on Way's FMLA retaliation claim. ...................................................................... 13

      A.    To defeat summary judgment, Way was only required to show evidence of (1) a prima facie case and (2) pretext. ......... 14

      B.    Way has established a prima facie case of retaliation. ............. 15

            1.    Way can show causation under a cat's paw theory. ....... 16

2.    The suspicious timing of Way's termination confirms the causal link between her leave and her termination. ...................................................................20

3.    Temporal proximity can establish a prima facie causal link, and Way is not relying on solely on temporal proximity to show pretext. ............................21

C.    There is evidence that the City's stated reasons for terminating Way were pretextual.............................................22

Conclusion ........................................................................................26

Certificate of Service ......................................................................28

Certificate of Compliance ...............................................................29

## INDEX OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Acker v. General Motors, L.L.C.*,
  853 F.3d 784 (5th Cir. 2017) ................................................................6

*Campos v. Steves & Sons, Inc.*,
  10 F.4th 515 (5th Cir. 2021) ...............................................................17

*Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*,
  429 F.3d 108 (5th Cir. 2005) ................................................................3

*Dearman v. Stone Cnty. Sch. Dist.*,
  832 F.3d 577 (5th Cir. 2016) ..............................................................18

*Donnelly v. Acad. Partnerships L.L.C.*,
  2024 WL 1877043 (5th Cir. Apr. 30, 2024)........................................18

*EEOC v. Chevron Phillips Chem. Co., LP*,
  570 F.3d 606 (5th Cir. 2009) ............................................................6, 7

*In re Flugence*,
  738 F.3d 126 (5th Cir. 2013) ..............................................................24

*Gee v. Principi*,
  289 F.3d 342 (5th Cir. 2002) ...............................................15, 16, 22

*Guzman v. Allstate Assurance Co.*,
  18 F.4th 157 (5th Cir. 2021) ..........................................................12, 13

*Harville v. City of Houston, Mississippi*,
  945 F.3d 870 (5th Cir. 2019) ..............................................................17

*Hester v. Bell-Textron, Inc.*,
  11 F.4th 301 (5th Cir. 2021) ..........................................................11, 20

*Kariuki v. Tarango*,
  709 F.3d 495 (5th Cir. 2013) ..............................................................13

*Mota v. Univ. of Tex. Houston Health Sci. Ctr.*,
  261 F.3d 512 (5th Cir. 2001) ................................................................9

*Patton v. Jacobs Engineering Group, Inc.*,
  874 F.3d 437 (5th Cir. 2017) ...........................................................3, 4, 6

*Perkins v. Child Care Associates*,
  751 Fed. Appx. 469 (5th Cir. 2018).......................................16, 17, 19

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000)..................................................................15, 20, 22

*Russell v. McKinney Hosp. Venture*,
  235 F.3d 219 (5th Cir. 2000) ...............................................................16

*Shirley v. Precision Castparts Corp.*,
  726 F.3d 675 (5th Cir. 2013) ...............................................................12

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993)........................................................................14, 15

*Strong v. Univ. Healthcare Sys., LLC*,
  482 F.3d 802 (5th Cir. 2007) ...............................................................21

*Taylor v. Principal Financial Group, Inc.*,
  93 F.3d 155 (5th Cir. 1996) ...................................................................4

*Tolan v. Cotton*,
  572 U.S. 650 (2014)..................................................................................1

*Versaggi v. KLS Martin, L.P.*,
  2024 WL 2290653 (5th Cir. May 21, 2024).........................................4

*Zamora v. City Of Houston*,
  798 F.3d 326 (5th Cir. 2015) ...............................................................19

**STATUTES**

29 U.S.C. § 2614(a)(1)(B) ......................................................................11

TEX. LOC. GOV'T CODE
  § 102.006..................................................................23, 24, 25, 26
  § 102.009..................................................................23, 24, 25, 26

## INTRODUCTION

The fundamental flaw in the City's response brief is that it completely ignores the standard of review. "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Id.* at 657 (citation omitted). However, in its brief, the City disregards almost all of the evidence that Way described in her opening brief and instead simply tells its side of the story. That will not do. The Court should reject the City's blinkered version of events, which improperly "fail[s] to view the evidence at summary judgment in the light most favorable to [Way]." *Id.*

A second striking feature of the City's response is its repeated requests that the Court affirm summary judgment on grounds other than those stated by the district court. Although the Court of course has such power, those requests reveal that the City lacks confidence in the district court's reasoning.

Ultimately, neither the district court's opinion nor the City's alternative grounds for affirmance support summary judgment. Rather, evidence supports every disputed element of Way's ADA, TCHRA, and FMLA claims. Accordingly, the district court's summary judgment order should be reversed, and this case should be remanded for trial.

ARGUMENT IN REPLY

## I. The district court erred by granting summary judgment on Way's ADA and TCHRA discrimination claims.

The district court granted summary judgment on Way's ADA and TCHRA discrimination claims on the ground that "Plaintiff's anxiety and uterine fibroids were not qualifying disabilities because the limitations of these impairments were not known to the City." ROA.486. However, the summary judgment record makes it clear that fact issues exist regarding whether the City was aware of the limitations caused by each of Way's disabilities. Appellant's Br. at 14-18.

In response, the City insists that "Way never told Ms. Iyamu or anyone else at the City that Way had a limiting condition that required an accommodation." Appellees' Br. at 23; *see id.* at 20-26. This argument fails because the City ignores the evidence creating a fact issue regarding its awareness of the limitations caused by Way's disabilities.

### A. There is evidence that the City was aware of the limitations caused by Way's anxiety.

According to the City, "Way never told the City anything about 'anxiety' other than that Way believed she was experiencing anxiety.... Way certainly never identified any limitations resulting from purported anxiety and Way never requested any accommodation for whatever anxiety Way claimed to be experiencing." *Id.* at 24. In support of this assertion, the City only cites a declaration from its own human resources director. *See id.* (citing ROA.288-89).

However, the City never addresses the evidence discussed in Way's opening brief showing that (1) Way told Iyamu that her anxiety prevented her from coping with the requirements of her job without certain accommodations regarding expectations, timelines, and workflows; and (2) Iyamu acknowledged the limitations caused by Way's anxiety. *See* Appellant's Br. at 14-16. This evidence would allow a reasonable jury to find that Way's employer knew about the limitations caused by Way's anxiety. *See, e.g.*, *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("Callier's awareness of Cutrera's meeting with a rehabilitation counselor and her intention to return to work triggered the LSU Foundation's obligation to participate in an interactive process with Cutrera to attempt to identify a reasonable accommodation for Cutrera's disability.").

The City responds by citing *Patton v. Jacobs Engineering Group, Inc.*, which holds that "a jury must be able to infer [an employer's] knowledge of the limitations experienced by the employee as a result of his disability. In the case of a mental disability …, specificity in attributing a work limitation to a disability is particularly important." 874 F.3d 437, 444–45 (5th Cir. 2017) (cleaned up). However, *Patton* also makes it clear that "the employee need not utter any magic words"; she is only required to "explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason." *Id.* at 444.

Way has more than satisfied this test. Unlike the plaintiff in *Patton*, Way did not only make "vague" statements about anxiety or fail to connect her limitations to her disability. *Id.* Rather, Way explicitly told Iyamu that she was seeking medical treatment for anxiety, ROA.378, and then asked "for *specific* accommodations to allow me to cope." ROA.384 (emphasis added).

The City also cites *Versaggi v. KLS Martin, L.P.*, in which the employee "did not state that she was suffering from anxiety or that she needed accommodations for that reason." 2024 WL 2290653, at *2 (5th Cir. May 21, 2024). Here, of course, there is evidence that Way did both those things. ROA.378; ROA.384. And in *Taylor v. Principal Financial Group, Inc.*, the plaintiff never even told his employer that he suffered from any limitations at all as a result of his condition. 93 F.3d 155, 164 (5th Cir. 1996). In contrast, Way asked her employer for specific accommodations, thereby making it clear that she suffered from corresponding limitations. ROA.384.

Finally, the City asserts that "when the City's outside investigator asked [W]ay directly whether Way had ever claimed any disability, [W]ay expressly confirmed she had not." Appellees' Br. at 23 (citing ROA.427). This assertion is incorrect. The outside investigator asked Way, "You stated that you didn't make any written/formal request for a disability accommodation, but did you make any verbal accommodation requests to anyone?" ROA.427. Way replied that she had realized over the summer that her symptoms "could be defined as anxiety" and that "after my

4

diagnosis, I made request[s] which have largely gone ignored." ROA.427. Thus, far from an admission that Way did not claim a disability, this correspondence is further evidence that Way claimed a disability, informed the City of her limitations, and requested accommodations.

### B. There is evidence that the City was aware of the limitations caused by Way's uterine fibroids.

The City argues that although "Way requested FMLA leave for surgery related to fibroids, … Way never told the City the fibroids or surgery limited Way's major life activities or required any accommodation." Appellees' Br. at 25. But Way's opening brief describes contrary evidence, including evidence that Way told Iyamu "about the severity of my pelvic floor spasms" and submitted a "medical certification and written accommodation request" to the City's director of human resources. ROA.384-385; *see* Appellant's Br. at 17-18.

The City responds that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." Appellees' Br. at 25 (quoting *Acker v. General Motors, L.L.C.*). But Way's conversations with Iyamu were a discussion regarding the limitations caused by her disability, not a request for FMLA leave. Moreover, the accommodation request that Way submitted to the human resources director was not solely a request for FMLA leave. "[A]n employee seeking FMLA leave is by nature arguing that he *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he *can*

perform the essential functions of the job." *Acker*, 853 F.3d 784, 791-92 (5th Cir. 2017). Way's accommodation request did not assert that she could not perform her job (other than during brief periods in which she would require leave); rather, Way's accommodation request primarily asked for certain accommodations so that she *could* perform her job. *See* ROA.312 (asking for flexible hours, permission to work remotely, and intermittent leave). Thus, rather than relieving the City from responsibility for its discrimination against Way, *Acker* confirms that Way's written accommodation request was an ADA request for reasonable accommodations as well as an FMLA request for leave. Way was not required to use "magic words." *Patton*, 874 F.3d at 444; *see also EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) ("[T]he employee does not have to mention the ADA or use the phrase 'reasonable accommodation.'").

The City further claims that "Way admits she neither claimed the existence of a disability *and* she never requested any workplace accommodation." Appellees' Br. at 25. But Way most certainly "admits" no such thing. Again, Way's correspondence with the outside investigator is actually evidence that she did claim a disability and request accommodations. *See* Part I.A, *supra*. Additionally, this correspondence is from late 2019 and early 2020, ROA.427-36—several months *before* Way submitted her accommodation request relating to her fibroids in June 2020. *See* ROA.385.

Finally, the City argues that "Way never reported the fibroid condition or her need for fibroid surgery would limit Way in performing her job beyond the leave Way requested to secure treatment" and that it "granted Way all the FMLA leave Way requested." Appellees' Br. at 26. But once more, Way requested not only leave but also accommodations. ROA.312. This request for accommodations is part of what gave the City notice of the limitations caused by her fibroids. Further, the City granting Way leave does not show that it was unaware of her limitations. Rather, the fact that Way's accommodation request was combined with a leave request only confirms that the City knew that Way's limitations were caused by a disability. *See Chevron Phillips*, 570 F.3d at 621 ("A jury … reasonably could find that, since CPChem knew that Netterville had required medical leave due to her CFS, it knew that the release related to this condition, and that she therefore had adequately communicated the nature of her condition and her requested accommodations.").

## II.    The district court erred by granting summary judgment on Way's ADA and TCHRA retaliation claims.

The district court granted summary judgment on Way's ADA and TCHRA retaliation claims on the ground that "Plaintiff did not engage in the requisite protected activity to bring a retaliation claim pursuant to the ADA or the TCHRA." ROA.488. However, there is evidence both that Way requested reasonable accommodations for her anxiety and uterine fibroids and that Way filed an internal complaint of discrimination based on her anxiety. Appellant's Br. at 20-23.

In response, the City argues that "Way did not engage in any activity protected under the ADA because Way never placed the City on notice of any disability under the ADA." Appellees' Br. at 27. The City also asks the Court to affirm on grounds not decided by the district court, arguing that it "did not take any adverse action against Way" and that Way cannot show that "an adverse employment action would not have occurred but for her protected activity." *Id.* at 27-28. These arguments all fail.

## A.    There is evidence that Way engaged in protected activities.

The City's claim that Way did not engage in any protected activities can be quickly rejected. There is extensive evidence that Way engaged in protected activities with respect to both her anxiety (by requesting reasonable accommodations and complaining of discrimination) and her uterine fibroids (by requesting reasonable accommodations). *See* Appellant's Br. at 20-23. The City responds with only a single conclusory sentence denying that Way engaged in a protected activity, which it supports with only a single cite to the district court's opinion. *See* Appellant's Br. at 26-27 (citing ROA.488). The City has thus effectively conceded that it has no response to Way's argument that she engaged in protected activities.[1]

---

[1] To the extent that the City's briefing on this issue can be read to incorporate its response to Way's discrimination argument, Way incorporates her reply on that issue. *See* Part I, *supra*. Further, even under this generous reading of the City's brief, the City offers no response to Way's argument that she engaged in a protected activity by making a complaint about discrimination. *See* Appellant's Br. at 21-22.

**B.    The City's alternative grounds do not provide a basis for affirmance.**

Rather than meaningfully defend the stated basis for the district court's decision, the City quickly pivots to arguing that this Court can affirm "on any ground supported by the record." *Id.* at 27 (citation omitted). But the City's alternative arguments also fail.

The City claims that it "did not take any adverse action against Way." *Id.* However, the City *fired* Way, the very definition of an adverse action. ROA.373; *see Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). There can be no serious doubt that Way experienced an adverse employment action.

The City also asserts that Way cannot show "an adverse employment action would not have occurred but for her protected activity." Appellees' Br. at 28. According to the City, "Way cannot meet this burden because Way admits she never reported a disability or requested an accommodation and there is no evidence the City was aware of any limitations resulting from any of Way's alleged conditions." *Id.* (citing only ROA.288-89, the declaration of its human resources director).

Once again, Way "admits" no such thing. *See* Part I.A, *supra*. Moreover, the City is simply ignoring the extensive evidence that Way both informed the City of the limitations resulting from her disabilities and engaged in protected activities related to her disabilities. *See* Appellant's Br. at 14-16 (Way informed the City of the limitations caused by her anxiety); *id.* at 16-18 (Way informed the City of the

limitations caused by her uterine fibroids); *id.* at 20-22 (Way both requested reasonable accommodations for and complained of discrimination based on her anxiety); *id.* at 22-23 (Way requested reasonable accommodations for her uterine fibroids). Accordingly, the City's causation argument also fails.

## III. The district court erred by granting summary judgment on Way's FMLA interference claim.

The district court granted summary judgment on Way's FMLA interference claim on the ground that Way could not show that the City had denied her an FMLA benefit. ROA.489. However, there is evidence that the City interfered with Way's FMLA right to be restored to an equivalent position by reducing Way's salary after she returned from FMLA leave. Appellant's Br. at 24-27.

In response, the City argues that Way "both misstates the facts and misconstrues the law." Appellees' Br. at 30. However, the City's various factual and legal arguments all fail.

First, the City argues that it "approved all of Way's requests for FMLA leave and … Way took the [sic] all of the FMLA leave she requested without any interference at all." Appellees' Br. at 29. But the right to take leave is only one of the benefits that the FMLA grants to employees. Way is bringing an FMLA interference claim not because the City denied her leave requests but rather because the City violated her right "to be restored to an equivalent position with equivalent employment benefits, *pay*, and other terms and conditions of employment."

29 U.S.C. § 2614(a)(1)(B) (emphasis added); *see also Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 307 (5th Cir. 2021); Appellant's Br. at 25-26. Whether Way received the leave she requested is irrelevant to her claim that she was not restored to an equivalent position *on her return from leave*.[2]

Second, the City asserts that "Way returned to the position of first assistant city attorney on December 31, 2020, after her leave expired, but the City Council did not amend the budget until January of 2021." Appellees' Br. at 30 (citation omitted). The City's point is not entirely clear. If the City is arguing that Way cannot bring an FMLA interference claim because she was able to return to her old job after her leave, the City is ignoring that the basis of Way's FMLA interference claim is not a change in her job title but rather a reduction in her salary. On the other hand, if the City is arguing that Way could not have returned from leave to a reduced salary because the City did not amend its budget until January 2021, the City is ignoring that there is evidence that Way discovered the salary reduction "on December 23, 2020" and that the salary reduction occurred not as a result of City Council action but rather because the City "had incorrectly classified my FMLA status." ROA.385. Either way, this second argument does not support affirmance.

---

[2] The City attempts to distinguish *Hester* on the ground that it "is a Rule 12(b)(6) case, not a summary judgment case." Appellees' Br. at 30 n.3. But *Hester*'s procedural posture does not affect the legal proposition the case stands for—that an employee can bring an FMLA interference claim when her employer "interfere[s] with [her] right to reinstatement by failing to restore [her] to [her] position upon the termination of [her] FMLA leave." 11 F.4th at 307.

Third, the City claims that "the FMLA does not impose a strict liability standard requiring employers to reinstate employees to the same position following FMLA leave in all circumstances." Appellees' Br. at 30 (citing *Shirley v. Precision Castparts Corp.*). However, while the City is correct that the FMLA is not a strict liability regime, "the burden [is] on the *employer* that is denying reinstatement 'to show that an employee would not otherwise have been employed at the time reinstatement is requested.'" *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013) (emphasis added) (citation omitted). The City has not even attempted to show that Way's salary would have been reduced if she had not taken leave. *See* Appellees' Br. at 28-31. Accordingly, *Shirley* does not apply to this case.

Finally, the City insists that the record "does not support Way's conclusory assertion, made in her declaration … that Way's salary was reduced." Appellees' Br. at 30. But there is evidence that Way emailed Iyamu and others to complain about the "classification" of her "family medical leave," ROA.414, corroborating Way's testimony that the City "incorrectly classified my FMLA status." ROA.385.

Moreover, "'self-serving' affidavits and depositions may create fact issues even if not supported by the rest of the record." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). "[A] non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, *even if the affidavit is self-serving and uncorroborated*." *Id.* at 161 (emphasis added) (citation omitted).

Here, Way's declaration testimony is "particularized, not vague or conclusory." *Id.* Way specifically declares that upon returning from leave, she "discovered a sudden reduction in my salary. Concerned about this unexpected change, I conducted a thorough investigation. It became evident that Missouri City had incorrectly classified my FMLA status, leading to a lack of proper notice regarding the salary decrease." ROA.385. Notably, *the district court credited this testimony*, acknowledging that Way experienced an "erroneous reduction in her salary" after returning from leave. ROA.489. Further, the City has not pointed to any evidence contradicting this testimony. *See* Appellee's Br. at 30-31; *see also Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) ("[A] vague or conclusory affidavit is insufficient to create a genuine issue of material fact *in the face of conflicting probative evidence*." (emphasis added)). The Court should not affirm summary judgment by disregarding testimony that (1) is consistent with the rest of the record, (2) the district court credited, and (3) the City has not even attempted to refute.

## IV. The district court erred by granting summary judgment on Way's FMLA retaliation claim.

The district court granted summary judgment on Way's FMLA retaliation claim on the ground that "Plaintiff fails to put forth any arguments or evidence showing that Defendant's reason for her termination is pretextual." ROA.491. However, the record contains ample evidence that the City's stated budgetary reason for terminating Way was pretextual. *See* Appellant's Br. at 29-35.

13

In response, the City effectively concedes that there is a fact issue regarding whether the City's purported budgetary concerns were legitimate. Instead, it primarily argues that Way cannot establish a causal link between her FMLA leave and her termination. Tellingly, the City has again chosen to argue for affirmance on alternative grounds rather than meaningfully defend the district court's ground for summary judgment. However, the City's alternative grounds fare no better than those put forth by the district court.

### A. To defeat summary judgment, Way was only required to show evidence of (1) a prima facie case and (2) pretext.

As an initial matter, the City misstates the legal standard applicable to Way's retaliation claim. The City claims that "[a] reason cannot be proved to be 'a pretext for discrimination' unless it is shown **both** that the reason was false, and that [retaliation] was the real reason." Appellees' Br. at 31 (quoting *St. Mary's Honor Ctr. v. Hicks*). The City appears to be arguing that in order to defeat summary judgment, Way was required to introduce not only evidence of pretext but also additional independent evidence of retaliation.

However, the rule quoted by the City has no application at the summary judgment stage. *St. Mary's Honor Center* involved the question of whether "the trier of fact's rejection of the employer's asserted reasons for its actions *mandates* a finding for the plaintiff." 509 U.S. 502, 504 (1993) (emphasis added). The Supreme Court answered that question in the negative, *see id.* at 511, but nonetheless made it

clear that "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* (emphasis in original). Accordingly, a plaintiff who has established a prima facie case is not required to introduce additional evidence of retaliation to defeat summary judgment. *Id.* Rather, "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000); *see also Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) ("In such cases, a plaintiff may withstand a motion for summary judgment without adducing additional, independent evidence of retaliation." (citing *Reeves*)).

In short, if Way has introduced evidence of both a prima facie case and pretext, summary judgment was inappropriate, even without additional evidence of retaliation.

**B.    Way has established a prima facie case of retaliation.**

The district court correctly "assume[d]" that Way had "establish[ed] a *prima facie* retaliation case." ROA.490. After all, Way was protected under the FMLA, her termination was a materially adverse action, and the temporal proximity between her leave and her termination establishes a causal link between her protected status and her termination. *See* Appellant's Br. at 28.

In its response, the City challenges only the causal link element of Way's prima facie case. However, the City's causation arguments fail.

### 1.     Way can show causation under a cat's paw theory.

The City's primary challenge to Way's FMLA retaliation claim is that "Way did not … present evidence that anyone on City Council, let alone the majority of council members necessary to enact the ordinance, even knew of Way's medical conditions or leaves of absence, let alone that any one council member, let alone a majority of council harbored any animus toward Way for any reason." Appellees' Br. at 32. According to the City, "Way did not show any causal link between City Council's budget and Way's FMLA leave particularly because the undisputed evidence is that City Council did not know—indeed, could not know—Way had requested and had taken FMLA leave." *Id.* at 34.[3]

However, the district court did not accept this argument, and for good reason. "[C]ourts will not blindly accept the titular decisionmaker as the true decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000). "[A] defendant may be held liable if the manager who discharged the plaintiff merely acted as a rubber stamp, or the 'cat's paw,' for a subordinate employee's prejudice, even if the manager lacked discriminatory intent." *Id.* (citation omitted).

---

[3] Although the City sometimes frames this argument as a response to Way's pretext argument and other times as a challenge to the causal link element, the argument seems best understood as a challenge to the causal link element. *See Gee*, 289 F.3d at 345-47; *Perkins v. Child Care Associates*, 751 Fed. Appx. 469, 473-76 (5th Cir. 2018). But regardless of how Court conceptualizes the argument, it fails for the reasons given below.

"To invoke the cat's paw theory of causation, [a plaintiff] must establish "(1) that a co-worker exhibited [retaliatory] animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 878 n.30 (5th Cir. 2019); *see also Perkins*, 751 Fed. Appx. at 475-76 (applying cat's paw analysis in FMLA retaliation context). The elements of a cat's paw theory are easily satisfied in this case, with Iyamu as the true decisionmaker.

First, although the City asserts that "[n]or did Ms. Iyamu propose or even suggest City Council eliminate the position," Appellees' Br. at 32, Way's termination letter expressly stated that her position had been eliminated because "the City Attorney [Iyamu] reported to the City Manager that the position of First Assistant City Attorney was not a practical application of the City's resources." ROA.373; *see* ROA.284. Thus, there is evidence that Iyamu exerted influence over the City Council's decision to terminate Way.

Second, there is evidence that Iyamu exhibited retaliatory animus towards Way. Iyamu knew that Way had taken FMLA leave. *See* ROA.287 ("I never spoke to city council about the Plaintiff's FMLA leave."); *see also* ROA.413-16. At the prima facie stage, this knowledge and the mere weeks between Way's return from leave and her termination is sufficient to establish retaliatory animus. *See Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 528 (5th Cir. 2021) ("[A] month is close enough

17

in time to create a causal connection."); *Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 582 (5th Cir. 2016) ("[A]t the prima facie stage, temporal proximity can only establish a causal link *when it is connected to the decision maker's knowledge of the protected activity*." (emphasis added) (citation omitted)); *see also* ROA.385, ROA.373 (Way's FMLA leave ended on December 31, 2020, and she was terminated on January 19, 2021).

But if necessary, Way has introduced additional evidence of Iyamu's retaliatory animus. "While we have not precisely defined animus, it suggests at least some form of ill will, antagonism, or hostility." *Donnelly v. Acad. Partnerships L.L.C.*, 2024 WL 1877043, at *6 (5th Cir. Apr. 30, 2024) (cleaned up). There is evidence that Iyamu exhibited these feelings towards Way. Way's declaration describes how the first time Way was required to leave work for medical reasons, Iyamu called her and "[r]ather than expressing concern, she seemed dissatisfied with my decision to visit the emergency room and questioned why I hadn't chosen to consult my primary care physician instead. On this day, [Iyamu] took note of my necessity to leave work for a hospital visit and labeled it as a concern." ROA.384. Then the next day, Iyamu entered Way's office and "proceeded to conduct an intrusive interrogation, bombarding me with a series of highly inappropriate questions pertaining to my treatment and diagnosis." ROA.384.

Way's declaration also describes other "discriminatory actions relating to my disability" taken by Iyamu in addition to "her refusal to accommodate my need for time off from work," including Iyamu "sarcastically inquir[ing] as to the reason behind my emotional distress." ROA.384-85. Further, there is evidence that in late August 2019, shortly after Way first complained to Iyamu about her anxiety, Iyamu reached out to the City's human resources director to ask how she could "reclassify" Way's job title from "'First Assistant City Attorney' … to just 'Assistant City Attorney,'" ROA.402; *see* ROA.385, suggesting that Iyamu was already looking for ways to downgrade Way's job title. And in September 2020, shortly after Way first requested FMLA leave, Iyamu asked an external expert to perform a budgetary review of her office's staffing needs, ROA.391, ROA.393; *see* ROA.385, ROA.312-20, which the jury could view as an attempt by Iyamu to bolster her pretextual argument that Way's position needed to be eliminated. All of this evidence is sufficient for a jury to find that Iyamu harbored retaliatory animus towards Way.[4]

---

[4] *See, e.g.*, *Perkins*, 751 Fed. Appx. at 475 ("Perkins stated in her declaration that after she returned from intermittent leave in spring 2014, Johnson told her she was missing too much work. Johnson allegedly told Perkins she could find someone who wanted to work if Perkins did not want to work. A reasonable factfinder could interpret Johnson's remarks as evidence of animus toward Perkins for her use of FMLA leave."); *Zamora v. City Of Houston*, 798 F.3d 326, 333-34 (5th Cir. 2015) ("[A]t the time that Zamora's CRU supervisors submitted their statements to Internal Affairs, each was well aware that Zamora had joined Manuel's discrimination suit…. When considered with the highly negative statements themselves—which severely attack Zamora's credibility and reputation—a reasonable jury easily could have found that the CRU supervisors were motivated by retaliatory animus.").

Additionally, there is at least one further basis for a reasonable jury to find that Iyamu harbored retaliatory animus towards Way. Iyamu told the City Manager that Way's position needed to be eliminated for budgetary reasons, ROA.373, and there is evidence that this reason was pretextual. *See* Appellant's Br. at 29-35; *see also* Part IV.C, *infra*. The jury could infer Iyamu's animus simply from the falsity of her reason for terminating Way. *See Reeves*, 530 U.S. at 147-49.

### 2. The suspicious timing of Way's termination confirms the causal link between her leave and her termination.

The City argues that "Way did not establish the elements of a prima facie case because the undisputed evidence shows the City Manager started evaluating the structure of the City Attorney's office in August 2019, nearly a year before Way's first request for leave." Appellees' Br. at 33.

However, this point only confirms that Way has established a prima facie causal link. If the City really did begin to consider eliminating Way's position in August 2019, did not take any action for over a year, and then finally acted right after Way returned from FMLA leave, a reasonable jury certainly could find a prima facie causal link between the leave and the termination. *See Hester*, 11 F.4th at 306 (plaintiff pled a prima facie case where "Bell-Textron did not fire Hester at the time of his pre-leave workplace performance issues in June and October 2018, but rather waited until December 2018 to do so—approximately two months into Hester's FMLA leave").

Indeed, this conclusion is only common sense. If an employer has pre-existing grounds for terminating an employee but does not actually terminate the employee until she takes medical leave, it is reasonable to infer from this suspicious timeline that the leave is the actual cause of the termination. *See* Appellant's Br. at 32-33.

### 3. Temporal proximity can establish a prima facie causal link, and Way is not relying on solely on temporal proximity to show pretext.

The City argues that the "temporal proximity between [Way's] last FMLA leave and City Council's vote to eliminate the first assistant city attorney position" is not "evidence of retaliation" because "[t]emporal proximity alone is insufficient to support a finding of 'but for' causation." Appellees' Br. at 32-33 (citing *Strong v. Univ. Healthcare Sys., LLC*). There are at least two flaws in this argument.

First, if the City is arguing that temporal proximity does not allow Way to establish a prima facie causal link between her leave and her termination, *Strong* is inapposite. The defendant in *Strong* conceded that the plaintiff had made a prima facie showing; the issue in that case was whether temporal proximity alone could show that the defendant's stated reason for terminating the plaintiff was *pretextual*. *See* 482 F.3d 802, 805, 807-08 (5th Cir. 2007). As Way explained in her opening brief, the temporal proximity between the end of her FMLA leave in December 2020 and her termination in January 2021 is sufficient, by itself, to establish a *prima facie* causal connection. *See* Appellant's Br. at 28 (citing cases).

Second, if the City is arguing that temporal proximity alone is not enough to show that its stated reasons for terminating Way were pretextual, Way is not making such a claim. Rather, as discussed further below, Way's pretext argument is based on a variety of factors; temporal proximity plays only a small role in the argument. *See* Appellant's Br. at 29-35; Part IV.C, *infra*.

### C.    There is evidence that the City's stated reasons for terminating Way were pretextual.

For the above reasons, there is evidence of a causal link between Way's leave and her termination. Because Way has thus established a prima facie case of retaliation, summary judgment was inappropriate if there is also evidence that the City's stated budgetary reason for terminating Way was pretextual. *See Reeves*, 530 U.S. at 147-49; *Gee*, 289 F.3d at 348.

Way's opening brief described the abundant evidence of pretext in this case. Most significantly, the City's alleged budgetary concerns are directly contradicted by an external report that the City received in September 2020 finding that the law department's budget was reasonable and recommending that rather than eliminating or downgrading attorney positions, the department should be focused on hiring additional support staff. *See* Appellant's Br. at 30-32. Additionally, the timeline surrounding Way's termination is suspicious; the City has offered inconsistent explanations for Way's termination; and Way was terminated in a procedurally irregular manner. *Id.* at 32-35.

The City does not offer any meaningful response to most of Way's evidence of pretext. *See* Appellees' Br. at 31-34. The City never explains why the September 2020 external report is not evidence that its stated budgetary reason is pretextual. It also makes no attempt to explain the suspicion timeline regarding Way's termination or to argue that a suspicious timeline is not evidence of pretext. Nor does the City deny that it has offered inconsistent explanations for Way's termination.[5] The City has thus effectively conceded that there is at least some evidence of pretext.

The City only directly responds to one of Way's pretext arguments—that she was terminated in a procedurally irregular manner. According to the City, "Way does not explain why this assertion supports an inference that the City Council's action was pretextual. The City, as a matter of law, was authorized to modify its budget." *Id.* at 33 (citing Tex. Local Gov't Code §§ 102.006, 102.009). This response fails for at least three reasons.

First, although the evidence of procedural irregularities regarding Way's termination is both extensive and shocking, Way's pretext argument in no way depends on this evidence. The evidence of pretext that the City does not challenge is, by itself, sufficient to support a finding of pretext.

---

[5] Indeed, the City's brief reiterates the City's inconsistent explanations for Way's termination. *Compare* Appellees' Br. at 11 ("Way's work performance was poor from the very beginning."), *with id.* at 31 ("[T]he City Council eliminated the position of first assistant city attorney for budgetary reasons.").

Second, to the extent the City is suggesting that evidence of procedural irregularities is not probative of pretext, this position is contrary to the Fifth Circuit precedent that Way cited in her opening brief. *See* Appellant's Br. at 35 (citing *Auguster* and *Russell*). The City does not even attempt to distinguish these cases.

Third, to the extent the City is arguing that its actions were affirmatively authorized under Sections 102.006 and 102.009, this position is both inconsistent with the position the City took below and legally incorrect.

In the district court, the City argued that "[a]s a matter of law the City could modify the annual budget, provided they do not change expenditures, *without going to the processes provided by Texas Local Government Code §§ 102.006 and 102.009*." ROA.463 (emphasis added). Way has explained in her opening brief why this argument is legally incorrect. *See* Appellant's Br. at 34. Accordingly, the City has now switched from arguing that it was not required to follow Sections 102.006 and 102.009 to arguing that those provisions affirmatively authorized its actions.

The City is judicially estopped from making this new, inconsistent argument. *See In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013). But the Court need not undertake a judicial estoppel inquiry, because the City's new argument fails on the merits. Rather than affirmatively authorizing the City's actions, Sections 102.006 and 102.009 are the very provisions that the City *violated* when it terminated Way.

Section 102.006 provides that "[t]he governing body of a municipality shall hold a *public* hearing on the proposed budget. Any person may attend and may participate in the hearing." TEX. LOC. GOV'T CODE § 102.006(a) (emphasis added). However, although the City's brief refers in passing to "an open meeting," Appellees' Br. at 14, the record shows that the City Council in fact did *not* eliminate Way's position in an open meeting. Rather, the City's own summary judgment evidence and briefing makes it abundantly clear that Way's position was eliminated at a *closed* meeting.[6] Thus, far from authorizing the City's actions, Section 102.006 confirms that the City terminated Way in a procedurally irregular manner.

Section 102.009 also does not help the City. Way's termination letter informed her that the City had decided to "eliminate" her position and "to re-deploy the budget for that position to create the position of Junior Associate Assistant City Attorney." ROA.373. But under Section 102.009, "the governing body may spend municipal funds only in strict compliance with the budget." TEX. LOC. GOV'T CODE § 102.009. In other words, in order to "re-deploy" the budget for Way's position, the City was required to first amend its budget. *See* Appellant's Br. at 34. However, the City can only amend its budget "by ordinance," and the City effectively conceded in

---

[6] *See, e.g.*, ROA.458 (summary judgment reply referring to "the closed executive session where city council decided to eliminate Plaintiff's position"); *see also, e.g.*, ROA.287 ("closed executive session"); ROA.226 ("executive session"); ROA.272 ("executive session").

the district court that it never adopted such an ordinance. *See id.*; *see also* ROA.463.[7] Thus, there is evidence that the City's termination of Way violated Section 102.009 as well as Section 102.006.

In short, the City has gone from arguing that it was not required to follow Sections 102.006 and 102.009 to arguing that those two sections affirmatively authorized its actions. But neither argument is correct. The City was required to follow Sections 102.006 and 102.009, and there is evidence that it violated those provisions. This procedural irregularity is further evidence that the City's stated reasons for terminating Way were pretextual.

## CONCLUSION

Jamilah Way renews her request for relief in the Brief of Appellant.

---

[7] On appeal, the City twice refers to "the ordinance," Appellees' Br. at 14, 32, but it neither cites evidence of an ordinance nor explains its seemingly changed position about the existence of an ordinance.

Respectfully submitted,

**BECK REDDEN LLP**

By:   */s/ Bennett J. Ostdiek*
      Bennett J. Ostdiek
      bostdiek@beckredden.com
      Russell S. Post
      rpost@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR APPELLANT,
JAMILAH WAY**

### CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024 a copy of the foregoing Reply Brief of Appellant was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic filing system to all counsel of record.

William S. Helfand
bill.helfand@lewisbrisbois.com
Sean M. Higgins
sean.higgins@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, TX 770464

*Attorneys for Appellees*

*/s/ Bennett J. Ostdiek*
Bennett J. Ostdiek
*Attorney of Record for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,455 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point font.

Dated: October 15, 2024

*/s/ Bennett J. Ostdiek*
Bennett J. Ostdiek
*Attorney of Record for Appellant*